**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAVE LONG BEACH ISLAND, *et al*. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.: 1:25-cv-02211-JMC |
| v. ) | Judge Jia M. Cobb |
| ) | |
| U.S. DEPARTMENT OF COMMERCE, *et al*. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## <u>DECLARATION OF JORIS VELDHOVEN IN SUPPORT OF MOTION TO INTERVENE</u>

I, Joris Veldhoven, declare under penalty of perjury as follows:

1.      I am the Chief Executive Officer of Atlantic Shores Offshore Wind, LLC ("Atlantic Shores"). In that capacity, I am responsible for oversight and management of all aspects of Atlantic Shores' business, including Atlantic Shores' development and federal permitting efforts in relation to its portfolio of offshore wind energy projects located in the Outer Continental Shelf ("OCS"). I joined Atlantic Shores in January 2019 as its first Commercial Director and transitioned to my current role as Chief Executive Officer in September 2022.

2.      As Chief Executive Officer, I am responsible for setting the strategic direction of Atlantic Shores in consultation with our Board of Directors, and therefore closely monitor, evaluate, and respond to impacts to Atlantic Shores' project development, operations and objectives. I am therefore personally familiar with the federal approvals and authorizations that are the subject of this litigation as well as the impacts that could result if those approvals and authorizations were overturned. I execute this Declaration based on my personal knowledge in support of Atlantic Shores' motion to intervene in the above-captioned matter.

3.      Atlantic Shores was formed in 2018 with the sole purpose of developing offshore wind energy projects off the Atlantic Coast. The company has offices in Brooklyn, New York; Atlantic City, New Jersey; and Boston, Massachusetts.

4.      Atlantic Shores Offshore Wind, LLC, is a Delaware limited liability company that serves as a 50:50 joint venture between Shell New Energies US LLC and EDF-RE Offshore Development, LLC. Atlantic Shores Offshore Wind, LLC, is the sole member and is a member manager of, and provides operational services to, the following subsidiaries among others: (1) Atlantic Shores Offshore Wind Project 1, LLC, a Delaware limited liability company, which is the developer of Atlantic Shores South Project - Project 1 under Lease OCS-A 0499; and (2) Atlantic

1

Shores Offshore Wind Project 2, LLC, a Delaware limited liability company, which is the developer of Atlantic Shores South Project - Project 2 under Lease OCS-A 0499 but now under OCS-A 0570.[1] For ease of reference, this declaration uses the term "Atlantic Shores" to refer collectively to Atlantic Shores Offshore Wind, LLC and the above-referenced subsidiaries, although each individual subsidiary has primary responsibility for its particular development project.

5.    Plaintiffs' complaint in this case challenges the federal approvals and authorizations which Atlantic Shores has obtained from Defendants the National Marine Fisheries Service ("NMFS") and Bureau of Ocean Energy Management ("BOEM") that are critical to its efforts to develop the Atlantic Shores South Project (the "Project"). In particular, Plaintiffs' complaint alleges that the Federal Defendants acted arbitrarily, capriciously, and contrary to law in approving the Project and its associated authorizations. Complaint, Dkt. No. 1, ¶¶ 1, 6-9. Plaintiffs specifically allege that NMFS issued the LOA in violation of the Marine Mammal Protection Act ("MMPA"), *id*. ¶¶ 183-208; that NMFS issued the Project's Biological Opinion ("BiOP") in violation of the Endangered Species Act, *see, e.g.*, *id*. ¶¶ 74-118; that BOEM's approval of the final Environmental Impact Statement ("EIS") violated the National Environmental Policy Act ("NEPA"), *id.* ¶¶ 59, 60–63; that BOEM's approval of the Project also violated the Coastal Zone Management Act ("CZMA"), *id.* ¶¶ 8, 212–213; and that BOEM's approval of the Project's

---

[1] Atlantic Shores, *Construction and Operations Plan: Volume I – Project Information*, at E-1 to E-2 (May 2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Atlantic%20Shores%20South_Volume%20I_Project%20Description_05-01-2024.pdf (on file with author) (providing overview of Project 1 and Project 2). Lease OCS-A 0570 was the result of the 2024 segregation of Lease OCS-A 0499. *See* Letter from David Diamond, Deputy Chief                              for                              Operations, Office of Renewable Energy Programs, to Atlantic Shores (Sept. 30, 2024), https://www.boem.g ov/sites/default/files/documents/renewable-energy/state-activities/Segregation%20and%20Designations.pdf (on file with author).

Construction and Operations Plan ("COP") violated the Outer Continental Shelf Lands Act ("OCSLA"). *Id*. ¶¶ 219–228. Plaintiffs contend on the basis of these claims that all of the above approvals—which have taken years of expensive effort to obtain—should be "vacat[ed]" and "set[] aside" pursuant to the Administrative Procedure Act ("APA"). *Id*. at 1, 89–90.

6.      The Project is the result of a years'-long effort, involving the coordination of multiple federal and state agencies, as well as private investors, local stakeholders, and suppliers, to build offshore wind energy projects that are essential to achieving state renewable energy goals and for "expeditious and orderly development" of the OCS, as envisioned by Congress.[2] Atlantic Shores' development efforts began with the acquisition of offshore energy leases and have continued with a variety of other development activities. Atlantic Shores and its affiliates have paid nearly a billion dollars to the United States and US Wind, Inc. to acquire its leases and millions more in regular rent payments to the United States. Importantly, these costs include only payments made by Atlantic Shores for the right to own and use the leases, and do not include the hundreds of millions of dollars Atlantic Shores has spent to develop the leases.

7.      Below I describe the process that Atlantic Shores followed in acquiring its offshore energy leases and in obtaining the approvals it needs to build and operate the Project.

**Project Overview**

8.      The Project, which consists of two wind energy facilities (Project 1 and Project 2) located off the coast of New Jersey in two lease areas, OCS-A 0499 and OCS-A 0570 (the "Lease Area") on the OCS, will include up to 200 wind turbine generators combined and is anticipated to have a generation capacity of 2.5 gigawatts ("GW").[3]

---

[2] 43 U.S.C. § 1332(3).

[3] Atlantic Shores, *Construction and Operations Plan: Volume I – Project Information*, at E-1 to E-2, 4-1 to 4-2 (May 2024), https://www.boem.gov/sites/default/files/documents/renewable-

9.      Construction of the Project will also include the installation of up to ten offshore substations, one meteorological tower, up to four temporary meteorological and oceanographic buoys, inter-array cables, up to two onshore substations, one operations and maintenance facility, and up to eight transmission cables making landfall at two potential New Jersey locations: the Atlantic Landfall site in Atlantic City, New Jersey and/or Monmouth Landfall site in Sea Girt, New Jersey.[4]

10.     Once completed, the Project is expected to produce enough clean energy to power approximately one million homes and businesses in New Jersey.

11.     In 2021, when the New Jersey Board of Public Utilities ("NJ BPU") awarded Atlantic Shores offshore renewable energy credits ("OREC") for the Project, NJ BPU estimated the Project would inject over $1.8 billion dollars into New Jersey's economy throughout its development and operation and bring an estimated 18,550 direct and 40,744 total job-years to New Jersey.[5] Atlantic Shores anticipates similar economic benefits in any future offtake agreement for the Project.

**The Project's Leasing and Permitting Process**

12.     After thorough environmental review and issuing an environmental assessment under NEPA, BOEM conducted a competitive lease sale of Lease OCS-A 0499 on November 9, 2015. U.S. Wind Inc. won Lease OCS-A 0499. Lease OCS-A 0499 consists of over 180,000 acres and is located on the OCS.

---

energy/state-activities/Atlantic%20Shores%20South_Volume%20I_Project%20Description_05-01-2024.pdf.

[4] *Id.* at 4-1 to 4-2.

[5] N.J. Board of Public Utilities, ORDER, Dkt. No. QO20080555 & QO21050824 (June 30, 2021), https://publicaccess.bpu.state.nj.us/DocumentHandler.ashx?document_id=1252912 (on file with author). On June 4, 2025, Atlantic Shores filed a petition with NJ BPU to cancel its OREC award due to uncertainties that have arisen from the Presidential Wind Memorandum and related adverse effects, *see infra* paragraphs 27, 31.

13.     On November 16, 2018, BOEM received an application from U.S. Wind Inc. to assign 100 percent of the lease to EDF Renewables Development, Inc. BOEM approved the assignment on December 4, 2018. EDF Renewables Development, Inc. acquired Lease OCS-A 0499 from US Wind, Inc. for $215 million. The lease was subsequently assigned to Atlantic Shores Offshore Wind, LLC, in August 2019. On September 28, 2021, Atlantic Shores Offshore Wind, LLC, assigned its 100 percent interest in the southern portion of OCS-A 0499 (which contains the Atlantic Shores South Projects 1 and 2) to Atlantic Shores Offshore Wind Project 1, LLC and Atlantic Shores Offshore Wind Project 2, LLC, respectively, with each entity having a 50 percent interest. On April 19, 2022, BOEM approved a partial assignment (i.e., segregation) of lease OCS-A 0499. The northern portion of OCS-A 0499 was retained by Atlantic Shores Offshore Wind, LLC, and given a new lease number OCS-A 0549. The southern portion retained the original lease number assigned by BOEM: OCS-A 0499.

14.     On December 6, 2019, after extensive surveys of the Project area to understand and characterize the environmental and seabed conditions at the Project site, Atlantic Shores submitted a Site Assessment Plan ("SAP") for Lease OCS-A 0499 containing this information as required by BOEM regulations.[6] The SAP was updated several times and BOEM issued its final approval on April 8, 2021.[7]

15.     On March 26, 2021, Atlantic Shores submitted a detailed Construction and Operations Plan ("COP") to BOEM for the Project. After three years of additional intensive

---

[6] BOEM, *Site Assessment Plan for the Atlantic Shores Offshore Wind Project* (Dec. 6, 2019), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/OCS-A-0499-SAP.pdf (on file with author).

[7] U.S. Dep't of the Interior, Atlantic Shores Site Assessment Plan Approval Letter (Apr. 8, 2021), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SAP-Approval-Letter-ASOW.pdf  (on file with author).

analysis and preparatory permitting activity, the COP was updated and resubmitted in May 2024.[8] The final version of the COP is thousands of pages long, including appendices.[9]

16.     On September 30, 2021, BOEM issued a Notice of Intent ("NOI") to prepare an EIS under NEPA for its review of COP South.[10] The publication of the NOI initiated the public scoping process and opened a 30-day public comment period, which ended on November 1, 2021.[11] During that time, BOEM held public scoping meetings and accepted comments. Following the comment period, BOEM published a scoping report and used the comments received during the public scoping process to help identify important resources and issues, impact-producing factors, reasonable alternatives for consideration, and potential mitigating measures that should be analyzed in the draft EIS for the Project.

17.     BOEM published the draft EIS and initiated a public comment period in May 2023.[12] BOEM held two in-person and two virtual meetings where it again invited public comment and offered an opportunity to provide additional input for BOEM to consider in its NEPA analysis.[13] Atlantic Shores attended all of the meetings and submitted written comments. BOEM published its final EIS in May 2024.[14]

18.     On July 2, 2024, BOEM issued a ROD documenting its adoption of the final EIS pursuant to NEPA, its decision to approve the COP, and its findings as to other applicable statutory

---

[8] BOEM, *Record of Decision for Atlantic Shores Offshore Wind South Project Construction and Operations Plan*, at 3 (July 1, 2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Atlantic%20Shores%20South%20ROD.pdf (on file with author).
[9] Atlantic Shores, *Construction and Operations Plan* (Sept. 2021), https://www.boem.gov/renewable-energy/state-activities/atlantic-shores-offshore-wind-construction-and-operations-plan (on file with author).
[10] 86 Fed. Reg. 54231, 54231 (Sept. 30, 2021).
[11] *Id*. at 54231–32.
[12] 88 Fed. Reg. 32242, 32242 (May 19, 2023).
[13] *Id*.
[14] 89 Fed. Reg. 47174, 47174-75 (May 31, 2024).

requirements.[15] BOEM formally approved the COP on October 1, 2024, permitting Atlantic Shores to proceed with the development and operation of the Project.[16] BOEM's COP approval requires Atlantic Shores to follow over eighty pages of detailed terms and conditions.[17]

19.    In September 2022, pursuant to its draft COP, Atlantic Shores submitted an application to NMFS requesting a LOA for the unintentional and non-lethal take of marine mammals incidental to the proposed construction of Project 1 and Project 2 within the OCS-A 0499 lease area.[18] The application contained various construction schedule scenarios and a myriad of mitigation measures customized for the various construction activities and related surveys. NMFS published Notice of the LOA application in the Federal Register on September 29, 2022.[19] After conducting a formal rulemaking process, on September 24, 2024, Atlantic Shores received an Incidental Take Regulation ("ITR") and LOA from NMFS setting out a wide range of conditions, mitigation measures, and monitoring and reporting requirements for Atlantic Shores' construction activities, including specific mitigation measures for installation of foundation monopiles, construction surveys using specified high-resolution geophysical

---

[15] 89 Fed. Reg. 55977, 55977-78 (July 8, 2024); BOEM, *Record of Decision for Atlantic Shores Offshore Wind South Project Construction and Operations Plan,* supra note 8, at 3.

[16] Letter from David Diamond, Deputy Chief for Operations, Office of Renewable Energy Programs, to Jennifer Daniels, Vice President, Atlantic Shores Offshore Wind Project 1, LLC, *supra* note 1; BOEM, *Conditions of Construction and Operations Plan Approval, Lease Number OCS-A 0499* (Sept. 30, 2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/ASOW-South%20Project%201%20OCS-A%200499%20Conds%20of%20COP%20Appvl_0.pdf (on file with author).

[17] *Id.*

[18] Atlantic Shores, *Application for Marine Mammal Protection Act (MMPA) Rulemaking and Letter of Authorization* (Sept. 2022), https://media.fisheries.noaa.gov/2022-09/AtlanticShoresOWF_2022_Application_OPR1.pdf (on file with author).

[19] 87 Fed. Reg. 59061 (Sept. 29, 2022).

Docusign Envelope ID: 6A1550A7-F59B-40B0-A6E7-CBDC0FE6F6B6

acoustic sources, and vessel strike avoidance.[20] The LOA is valid for five years through December 31, 2029.[21]

20.    NMFS, along with BOEM and other cooperating agencies, conducted a comprehensive consultation pursuant to Section 7 of the ESA, resulting in a December 2023 BiOp that assessed the potential effects of construction, operation, maintenance and decommissioning of the Project on ESA-listed species and identified enforceable mitigation measures and requirements to minimize impacts to such species.[22]

21.    Atlantic Shores also coordinated closely with the New Jersey Department of Environmental Protection ("NJDEP"), submitting a consistency certification pursuant to the CZMA, 16 U.S.C. § 1451, voluntarily including offshore Project areas that are outside the State's scope of jurisdiction under the CZMA, demonstrating that the Project was consistent with New Jersey's enforceable coastal zone policies and committing to a wide range of mitigation measures for the Project's construction activities.[23] On April 1, 2024, NJDEP concurred with Atlantic Shores' consistency certification, finding that the Project, as described in the COP, is consistent

---

[20] NMFS, Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to the Atlantic Shores South Project Offshore of New Jersey, 89 Fed. Reg. 77972, 77972 (Sep. 24, 2024).

[21] *Id.*

[22] NMFS, Endangered Species Act Section 7 Consultation Biological Opinion for Construction, Operation, Maintenance, and Decommissioning of the Atlantic Shores South Offshore Energy Project (Lease OCS-A 0499) (Dec. 18, 2023), https://www.fisheries.noaa.gov/s3/2024-02/GARFO-2023-01804.pdf (on file with author); BOEM, Atlantic Shores Offshore Wind South Final Environmental Impact Statement, Volume II App. A § A.2.2.2 (May 2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/AtlanticShoresSouth_Vol1_FEIS.pdf (on file with author).

[23] Atlantic Shores, *Construction and Operations Plan: Appendix I-C – Coastal Zone Management Consistency* (May 2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/2024-05-01_App%20I-C_CZMA%20Consistency%20Certification.pdf (on file with author). Although the Project's lease areas do not fall within a "Geographic Location Description" for purposes of 16 U.S.C. § 1456(c)(3)(A) and the implementing regulations at 15 C.F.R. Part 930 Subparts D and E, Atlantic Shores voluntarily submitted a federal consistency certification to NJDEP for those areas.

with the State's coastal zone management plan.[24] Atlantic Shores provided BOEM with a copy of the concurrence letter as required by 30 C.F.R. § 585.627(b) and the ROD.[25]

**Impact of Plaintiffs' Requested Relief on Atlantic Shores' Interests**

22.    Plaintiffs' demand that the Project's ROD, COP, and LOA be "vacat[ed]" and "set[] aside" would have serious adverse impacts on Atlantic Shores and its ability to complete the Project. An order setting aside or enjoining the Project would prevent Atlantic Shores not only from developing the Project, but would result in catastrophic financial impacts, including the inability to enter into commercial business agreements and resume contractual relationships, the loss of recouping the value of fully vested leasehold interests, and the loss of investments made in reliance on fully-issued permit authorizations needed to develop the Project.

23.    The reversal of federal approval of the Project would have severe adverse consequences. Atlantic Shores has already incurred significant financial expenses developing our projects in lockstep with the various federal permitting steps that were successfully completed, including all the steps to be at the stage to launch construction. Atlantic Shores has also expended significant funds by entering into extensive contracts for developing, permitting, engineering, and preparing for construction of Project 1, and taken other costly steps in reliance on the approvals and authorizations challenged here. Similar activities have also been undertaken in support of Project 2, which was contemplated to be built in succession after Project 1. Atlantic Shores has been forced to cancel many of its construction-related contracts due to the

---

[24] Letter from Jennifer Moriarty, Director, Division of Land Resource Protection, to Jennifer Daniels, Atlantic Shores Offshore Wind LLC (Apr. 1, 2024), https://dep.nj.gov/wp-content/uploads/offshorewind/docs/njdep-asow-concurrence.pdf (on file with author).

[25] BOEM, Record of Decision for Atlantic Shores Offshore Wind South Project Construction and Operations Plan, App. B – OCSLA Compliance Review of the Construction and Operations Plan for the Atlantic Shores Offshore Wind South Project, *supra* note 8, at 15.

uncertainties caused by the Presidential Wind Memorandum and related adverse effects, *see infra* paragraphs 27, 31, leading to additional costs. Reversal of any of the challenged Project authorizations would prevent Atlantic Shores from entering into similar contracts in the future to construct and operate the Project.

24.    In addition to over one billion dollars in lease acquisition costs across all our leases, Atlantic Shores has incurred hundreds of millions of dollars in other development and site control activities, including COP preparation activities, time intensive and costly surveys both onshore and offshore, extensive environmental reviews and consultations with federal and state agencies, multi-year permitting efforts for multiple permits with multiple agencies and jurisdictions, and public engagement in support of the various regulatory and lease requirements.

25.    Atlantic Shores' substantial financial and schedule obligations would be impossible to achieve if the Project's approvals were vacated.

26.    The total estimated additional cost to see the Project through to completion and operations (i.e., full development of Project 1 and Project 2) is approximately $15 billion, resulting in further financial investment in the Project in fulfillment of its leasehold interest rights.

27.    Atlantic Shores has already been impacted by recent federal actions that represent a significant policy shift with respect to wind energy development. On January 20, 2025, President Donald Trump issued a Presidential Memorandum titled "*Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects*" (the "Presidential Wind Memorandum").[26] The Presidential Wind Memorandum directs agencies not to "issue new or

---

[26] 90 Fed. Reg. 8363 (Jan. 29, 2025).

renewed approvals, rights of way, permits, leases, or loans for onshore or offshore wind projects pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices." The Presidential Wind Memorandum does not establish a timeframe for completion of the review and the scope of the review is not clearly defined.[27] The Presidential Wind Memorandum and the federal government's subsequent actions in response thereto have created significant uncertainty in the offshore industry, directly impacted the Project, and impaired Atlantic Shores' ability to protect its leasehold interests.[28] For example, on the basis of the Wind Memorandum, the U.S. Environmental Protection Agency recently remanded the Project's final Clean Air Act permit, over Atlantic Shore's objections, to "reevaluate" the Project in light of the Memorandum. This Clean Air Act permit is required for construction activities.

28.     The Administration has taken other adverse actions against the wind industry and pending and approved projects, through the issuance of Interior Secretarial Orders and Memoranda that require, among other things, (1) Interior Secretary review and approval of routine project decision making; (2) reduction of spending for Interior's renewable energy programs; (3) changes in legal interpretations unfavorable to offshore wind approvals and incidental take permits; and most importantly (4) evaluation of whether the federal government

---

[27] *Id*.

[28] On July 29, 2025, Interior Secretary Doug Burgum issued a Secretarial Order requiring a department-wide review of existing wind and solar projects as well as an examination of existing litigation regarding any "approval of a wind or solar project" to "identify cases where remand of any such approvals to the Department would be appropriate." *See* U.S. Department of the Interior, Order No. 3437, Ending Preferential Treatment for Unreliable, Foreign-Controlled Energy Sources in Department Decision Making § 5 (July 29, 2025), https://www.doi.gov/document-library/secretary-order/so-3437-ending-preferential-treatment-unreliable-foreign (on file with author); *see also* Memorandum from Gregory Wischer, Deputy Chief of Staff – Policy, to Assistant Secretaries, Bureau and Office Heads (July 15, 2025), https://www.doi.gov/media/document/departmental-review-procedures-decisions-actions-consultations-and-other (requiring additional levels of review for all "decisions, actions, consultations, and other undertakings" related to permitting of wind and solar facilities) (on file with author).

should seek a remand and stay in pending litigation challenging the federal government's approval of renewable projects.[29]

29.     These actions by the federal government demonstrate a divergence from Atlantic Shores' interests in defending the Project.

30.     Plaintiffs in this case have also formally petitioned the U.S. government to cancel the leases for this Project and other Atlantic Shores projects, seeking to bypass this Court's review of the federal approval of the Project.[30] According to its public statements, Plaintiff SLBI is opposed to all offshore wind energy.[31]

31.     Not only does the recent federal activity raise questions regarding the federal government's posture with respect to its defense of the Project but it also heightens Atlantic Shores' interest in this litigation and emphasizes the importance that Atlantic Shores be able to defend the Project and protect its leasehold interest. Due to the uncertainty caused by the Presidential Wind Memorandum and other adverse actions taken by the current administration

---

[29] *See, e.g.*, Memorandum from Gregory Wischer, Deputy Chief of Staff – Policy, to Assistant Secretaries, Bureau and Office Heads (July 15, 2025), https://www.doi.gov/media/document/departmental-review-procedures-decisions-actions-consultations-and-other (requiring additional levels of review for all "decisions, actions, consultations, and other undertakings" related to permitting of wind and solar facilities) (on file with author); Memorandum from Gregory Wischer, Deputy Chief of Staff – Policy, to Acting Assistant Secretary for Fish and Wildlife and Parks, Ensuring Compliance with the Bald and Golden Eagle Protection Act and Executive Order 14315 (Aug. 4, 2025) Doug Burgum (@SecretaryBurgum), X (Aug. 4, 2025, at 6:48 PM ET), https://x.com/SecretaryBurgum/status/1952501870393786822 (on file with author); *See* U.S. Department of the Interior, Order No. 3437, Ending Preferential Treatment for Unreliable, Foreign-Controlled Energy Sources in Department Decision Making § 5 (July 29, 2025), https://www.doi.gov/document-library/secretary-order/so-3437-ending-preferential-treatment-unreliable-foreign (on file with author).
[30] Save Long Beach Island ("SLBI"), Petition to Cancel the Atlantic Shores Offshore Wind South and North Lease Areas; Expedited Response Requested for Atlantic Shores South (July 30, 2025), a85a2b_40d9a2bc8dd145ad91ff1b97d33fe4e1.pdf.
[31] SLBI, Save LBI Urges Large Environmental Groups to Reconsider Support of Offshore Wind and Consider Alternatives for Reducing Greenhouse Gas (July 21, 2025), https://www.savelbi.org/_files/ugd/a85a2b_a43b4412c5754454bf62331652d6ba81.pdf.

against renewable projects, Atlantic Shores has been forced to materially reduce its personnel, terminate contracts, cancel planned project investments, and seek to terminate the Project's OREC award with the NJ BPU.[32]

32.    Notwithstanding the adverse effects of recent federal actions, Atlantic Shores holds a fully vested project interest and the Project remains an operationally viable energy project under the existing federal government approvals that Plaintiffs seek to challenge in this case. Because of the costs and time required to secure those approvals, Plaintiffs' attempt to eliminate them would, if successful, deprive Atlantic Shores of the benefits of these extraordinary investments of time and personnel. For example, terminating the approvals likely would prevent Atlantic Shores from obtaining new ORECs with New Jersey, and also from entering into interconnection services agreements in the future to connect the Project to the regional transmission grid. Atlantic Shores' ability to enter into such agreements will be undermined if the Project approvals are vacated.

33.    Vacating the approvals and jeopardizing the projects would not only adversely impact Atlantic Shores but would also undermine New Jersey employment growth and energy goals. For context, the NJ BPU concluded that approval of Project 1 would bring an estimated 18,550 direct and 40,744 total job-years to New Jersey.[33] The same job opportunities would be available under any new OREC.

34.    The Project is also essential to the State of New Jersey's current energy goals. "The Projects would contribute to New Jersey's original goal of 7.5 gigawatts (GW) of offshore

---

[32] N.J. Board of Public Utilities, Verified Petition, Dkt. No. QO21050824 (June 4, 2025), https://publicaccess.bpu.state.nj.us/DocumentHandler.ashx?document_id=1386153 (on file with author).

[33] N.J. Board of Public Utilities, ORDER, Dkt. No. QO20080555 & QO21050824, *supra* note 5.

wind energy generation by 2035,[34] which has since increased to 11 GW by 2040.[35] Indeed, Atlantic Shores' Project will be the largest source of offshore clean energy in the region.

35.    Also, delays in and obstacles to the commencement of construction in the Project will have a very different impact on Atlantic Shores than they do on the federal government and other affected entities. Atlantic Shores is responsible to its investors to pursue the Project in a timely and financially responsible manner. Vacating validly issued Project approvals would prevent Atlantic Shores from meeting these objectives.

36.    Indeed, even if the approvals are not vacated outright but merely remanded back to the relevant agencies, Atlantic Shores' experience with its air permit indicates that any such remand would function as a default vacatur. In the unlikely chance that a remanded authorization is reissued to Atlantic Shores, changes in the scope of the Project could have a severe adverse impact on Atlantic Shores. For example, the approvals in question include measures Atlantic Shores must take to mitigate the impact of its activities on the marine environment. If Plaintiffs' claims resulted in a material expansion of such mitigation measures that are technically or economically challenging or infeasible, this could dramatically increase the cost of the Project or cause further delays before the additional mitigation measures can be implemented.

37.    In sum, the Federal Defendants properly approved the Project's COP and associated permits in question, following extensive consideration of the requirements of the APA, MMPA, ESA, NEPA, OCSLA, CZMA, and the relevant scientific data. If the relief Plaintiffs

---

[34] BOEM, *Notice of Intent To Prepare an Environmental Impact Statement for the Atlantic Shores Offshore Wind Projects Offshore New Jersey*, 86 Fed. Reg. 54231, 54343 (Sept. 30, 2021).
[35] N.J. Exec. Order No. 307 § 2 (Sept. 21, 2022), https://nj.gov/infobank/eo/056murphy/pdf/EO-307.pdf; *see also* N.J. Exec. Order No. 8 (Jan. 31, 2018), https://nj.gov/infobank/eo/056murphy/pdf/EO-8.pdf (establishing a goal of 3.5 GW of offshore wind energy generation by 2030) (on file with author); N.J. Stat. Ann. § 48:3-87.

request was granted, there is no question that such relief would have a severe adverse impact on Atlantic Shores' interests in its offshore leases and the Project described above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 11, 2025.

DocuSigned by:

FE672F5EAAF8456...

Joris Veldhoven

15