# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAVE LONG BEACH ISLAND, INC., *et al.*,

       *Plaintiffs*,

v.

U.S. DEPARTMENT OF COMMERCE, *et al.*,

       *Federal Defendants*,

and

ATLANTIC SHORES OFFSHORE WIND, LLC,

       *Intervenor-Defendant*.

Case No. 1:25-cv-02211-JMC

# FEDERAL DEFENDANTS' MOTION AND MEMORANDUM
## IN SUPPORT OF VOLUNTARY REMAND AND STAY

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

    I.      STATUTORY BACKGROUND ........................................................................ 1

    II.     FACTUAL BACKGROUND ............................................................................ 2

          I.      The Atlantic Shores Offshore Wind Project ................................. 3

          II.     Review of Existing Leases ........................................................ 4

          III.    Plaintiffs' case ........................................................................ 6

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ................................................................................................................... 7

    I.      Voluntary remand is appropriate given BOEM's ongoing re-evaluation of the COP approval ................................................................................ 7

          A.    BOEM's re-evaluation of its COP approval is a "substantial and legitimate" reason warranting remand ....................................... 8

          B.    A remand would conserve party and Court resources ................. 10

          C.    Remand would not unduly prejudice Plaintiffs or Atlantic Shores .......... 10

          D.    The Court should decline to impose deadlines for the remand ................ 11

    II.     The Court should stay the case ........................................................ 12

          1.     A stay would promote judicial economy and the orderly course of justice ........................................................................... 13

          2.     Absent a stay, Federal Defendants would face significant hardship ........ 14

          3.     A stay would not prejudice Plaintiffs or Atlantic Shores ......................... 15

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. District of Columbia*,
No. 20-CV-02453, 2024 WL 379811 (D.D.C. Feb. 1, 2024) ..................................... 12, 14, 16

*Am. Waterways Operators v. Wheeler*,
427 F. Supp. 3d 95 (D.D.C. 2019) .......................................................................................... 7

*Anchor Line Ltd. v. Fed. Mar. Comm'n*,
299 F.2d 124 (D.C. Cir. 1962) ............................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 14

*Cal. Cmtys. Against Toxics v. U.S. EPA*,
688 F.3d 989 (9th Cir. 2012) ................................................................................................. 7

*Campaign Legal Ctr. v. Correct the Rec.*,
No. 23-cv-75, 2023 WL 2838131 (D.D.C. Apr. 7, 2023) ..................................................... 12

*Carpenters Indus. Council v. Salazar*,
734 F. Supp. 2d 126 (D.D.C. 2010) ...................................................................................... 10

*Citizens Against the Pellissippi Pkwy. Extension v. Mineta*,
375 F.3d 412 (6th Cir. 2004) ...................................................................................... 7, 8, 9, 10

*Clinton v. Jones*,
520 U.S. 681 (1997) .............................................................................................................. 12

*Code v. McHugh*,
139 F. Supp. 3d 465 (D.D.C. 2015) ...................................................................................... 8, 9

*Ctr. for Biological Diversity v. EPA*,
861 F.3d 174 (D.C. Cir. 2017) .............................................................................................. 11

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
563 F.3d 466 (D.C. Cir. 2009) ................................................................................................ 1

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .............................................................................................................. 10, 16

*Edward W. Sparrow Hosp. Ass'n v. Sebelius*,
796 F. Supp. 2d 104 (D.D.C. 2011) ....................................................................................... 7

*Ethyl Corp. v. Browner*,
989 F.2d 522 (D.C. Cir. 1993) ............................................................................................. 8, 10

*FBME Bank Ltd. v. Lew*,
  142 F. Supp. 3d 70 (D.D.C. 2015) ................................................................ 8, 9, 10

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ................................................................................................. 6

*Friends of Animals v. Williams*,
  628 F. Supp. 3d 71 (D.D.C. 2022) ................................................................... 10, 17

*IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div.*,
  *Ams.*, 402 F. Supp. 2d 289 (D.D.C. 2005) ............................................................ 14

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................... 12

*Last Best Beef, LLC v. Dudas*,
  506 F.3d 333 (4th Cir. 2007) ............................................................................... 7, 8

*Limnia, Inc. v. U.S. Dep't of Energy*,
  857 F.3d 379 (D.C. Cir. 2017) ................................................................................ 7

*Marcum v. Salazar*,
  694 F.3d 123 (D.C. Cir. 2012) .............................................................................. 11

*NAACP v. Trump*,
  298 F. Supp. 3d 209 (D.D.C. 2018) ...................................................................... 10

*Nat. Res. Def. Council v. Kempthorne*,
  No. 1:05-CV-01207, 2015 WL 3750305 (E.D. Cal. June 15, 2015) .......... 13, 14, 16

*Nat'l PFAS Contamination Coal. v. United States Env't Prot. Agency*,
  No. 22-cv-132, 2023 WL 22078 (D.D.C. Jan. 3, 2023) .................................. 12, 14

*S. Yuba River Citizens League v. NMFS*,
  No. 2:13-cv-00059, 2013 WL 4094777 (E.D. Cal. Aug. 13, 2013) ................. 13, 14

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
  747 F.3d 581 (9th Cir. 2014) ................................................................................ 11

*SKF USA, Inc. v United States*,
  254 F.3d 1022 (Fed. Cir. 2001) ........................................................................... 6, 7

*Utah v. EPA*,
  No. 23-1157, 2025 WL 1354371 (D.C. Cir. May 2, 2025) .................................... 13

*Util. Solid Waste Activities Grp. v. EPA*,
  901 F.3d 414 (D.C. Cir. 2018) ............................................................................. 7, 9

*Wallish v. U.S. Dep't of Def.*,
  No. 24-cv-00616, 2025 WL 1580702 (D.D.C. June 4, 2025) .................................. 6

**Statutes**

43 U.S.C. § 1331(a) ..................................................................................................... 1

43 U.S.C. § 1332(3) ................................................................................................ 2

43 U.S.C. § 1337 .................................................................................................... 4

43 U.S.C. § 1337(p)(4) ....................................................................................... 5, 6

**Regulations**

30 C.F.R. § 585.102(a) ........................................................................................... 2

30 C.F.R. § 585.200(a) ........................................................................................... 2

30 C.F.R. §§ 585.203 .............................................................................................. 2

30 C.F.R. §§ 585.600 .............................................................................................. 2

**Other Authorities**

89 Fed. Reg. 55,977 (July 8, 2024) ........................................................................ 3

90 Fed. Reg. 8663 (Jan. 20, 2025) ......................................................................... 5

**TABLE OF EXHIBITS TO DECLARATION OF MATTHEW GIACONA**

| Exhibit | Description |
|---------|-------------|
| A | Atlantic Shores Offshore Wind South Project COP Signed Record of Decision (July 1, 2024) |
| B | *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (Presidential Wind Memo) (January 20, 2025) |
| C | Secretary of the Interior Order 3437 (July 29, 2025) |
| D | Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, *Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p)* (May 1, 2025) |
| E | *Secretary's Duties under Subsection 8(p)(4) of the Outer Continental Shelf Lands Act When Authorizing Activities on the Outer Continental Shelf* (April 9, 2021) |
| F | EPA Environmental Appeals Board Remand Order (March 14, 2025) |
| G | Atlantic Shores Letter to BOEM (May 29, 2025) |
| H | Offshore Renewable Energy Certificate Order (June 30, 2021) |

## INTRODUCTION

The United States Bureau of Ocean Energy Management ("BOEM") is reconsidering its approval of the Construction and Operations Plan ("COP") for the Atlantic Shores South Project, which is BOEM's final agency action Plaintiffs challenge in this case.  Given that the agency is reconsidering its COP approval for the Atlantic Shores Project, BOEM seeks a voluntary remand.  A voluntary remand would promote judicial economy by avoiding litigation over an agency action that is being reconsidered.  Project construction is not active or imminent.  Thus, remand would not unduly prejudice Defendant-Intervenor Atlantic Shores.  Nor would it prejudice Plaintiffs, who support a remand here.[1]

The Court should also stay the litigation pending the conclusion of BOEM's reconsideration to avoid expending party and judicial resources litigating the merits of a COP approval that BOEM is reconsidering.  At the conclusion of BOEM's reconsideration proceedings, BOEM will likely make a new agency action, and that action may affect—and potentially moot—Plaintiffs' claims.  To avoid potentially needless or wasteful litigation, the Court should remand the COP approval and enter a stay.

## BACKGROUND

### I.    STATUTORY BACKGROUND

The Outer Continental Shelf ("OCS") consists of the submerged lands beneath the ocean, generally from 3 to 200 miles seaward of the coastline.  *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 472 (D.C. Cir. 2009); 43 U.S.C. § 1331(a).  Under the Outer Continental Shelf Lands Act ("OCSLA"), the United States holds these lands as a "vital national

---

[1] Counsel for Federal Defendants conferred with counsel for Plaintiffs' and Defendant-Intervenor Atlantic Shores on this motion.  Plaintiffs support remand.  Counsel for Atlantic Shores was not able to provide a position on this motion, but advised Atlantic Shores reserves its right to oppose.

resource reserve" that "should be made available for expeditious and orderly development, subject to environmental safeguards[.]"  43 U.S.C. § 1332(3).

To that end, Interior, in consultation with other federal agencies, may grant a lease on the OCS for the purpose of renewable wind energy production.  *Id.* § 1337(p)(1)(C); 30 C.F.R. §§ 585.203, 585.206(a), 585.210, 585.211, 585.215, 585.216.  Under BOEM's renewable energy regulations and the standard OCS lease terms, a lease issued under OCSLA does not itself authorize development.  30 C.F.R. § 585.200(a).  A lessee must first assess the site, obtain BOEM's approval of a site assessment plan, and obtain BOEM's approval of a construction and operations plan.  30 C.F.R. §§ 585.600, 585.605-585.613, 585.620-585.628.

When approving a project under OCSLA, BOEM must ensure that "any activity" that it authorizes is "carried out in a manner that provides for" twelve enumerated requirements, including: "safety;" "protection of the environment;" "conservation of the natural resources;" "prevention of interference with reasonable uses (as determined by the Secretary)" of the OCS; and consideration of other uses of the sea and seabed, including the use of the area for fishing and marine navigation.  43 U.S.C. § 1337(p)(4)(A)-(L); 30 C.F.R. § 585.102(a).

## II.    FACTUAL BACKGROUND

Plaintiffs challenge BOEM's approval of the Atlantic Shores COP under, among other statutes, OCSLA, the National Environmental Policy Act ("NEPA") and the Coastal Zone Management Act ("CZMA").  Plaintiffs also challenge the National Marine Fisheries Service's ("NMFS") associated authorization and consultation under the Marine Mammal Protection Act ("MMPA") and Endangered Species Act ("ESA").  *See* Compl. ¶ 1, Dkt. No. 1.

I.        **The Atlantic Shores Offshore Wind Project**

In 2015, US Wind, Inc., was awarded a commercial Renewable Energy Lease for the Project area offshore New Jersey.  Giacona Decl. ¶ 4; Giacona Decl. Ex. A at 3 ("ROD").[2]  The Lease was assigned to EDF Renewable Development, Inc., in 2018, then subsequently assigned to Atlantic Shores in 2019.  ROD at 3; Giacona Decl. ¶ 4.  The Lease required Atlantic Shores to submit a COP to BOEM for approval before it could perform any construction or other activity on the Project area.  Giacona Decl. ¶ 5.

Atlantic Shores submitted its COP for the Project in March 2021.  ROD at 3.  On July 2, 2024, BOEM, NMFS, and the United States Army Corps of Engineers issued a Joint Record of Decision documenting their respective approvals related to the Atlantic Shores South Project COP.  Notice of Availability of Joint Record of Decision for the Proposed Atlantic Shores Offshore Wind South Project, 89 Fed. Reg. 55,977 (July 8, 2024); ROD at 1.  The Decision documented BOEM's decision to approve the COP for the Project with modifications and, among other things, NMFS's decision to issue a Letter of Authorization to Atlantic Shores under the MMPA.  ROD at 1-2.  In the Record of Decision, BOEM determined, based on the information then before it, that the Project would comply with BOEM regulations and would be "carried out in a manner that provides for safety, protection of the environment, prevention of waste, and other [OCSLA] subsection 8(p)(4) factors."  ROD App'x B at 2.  In September 2024, BOEM issued letters approving the COP and the conditions of approval for the Project.  Giacona Decl. ¶ 8.

---

[2] The Joint Record of Decision is also available online.  BOEM, U.S. Dep't of the Interior, *ROD* (2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Atlantic%20Shores%20South%20ROD.pdf.

The Atlantic Shores South Project consists of two wind energy facilities, known as Project 1 and Project 2, on the OCS offshore New Jersey.  As approved by the COP, the Project will consist of up to 200 wind turbine generators, offshore substations, and a meteorological tower, with subsea transmission cables making landfall in Atlantic City and Sea Girt, New Jersey.  ROD at 7-8.  Project 1 is expected to produce 1,510 megawatts and though not yet determined, Atlantic Shores has a goal of 1,327 megawatts for Project 2.  ROD at 8.

In its approval of the COP, BOEM relied on M-Opinion 37067 ("Anderson Opinion"),[3] a 2021 legal opinion from Robert T. Anderson, the then-Solicitor of the Department of the Interior, addressing OCSLA subsection 8(p)(4).[4]  *See* ROD at 5-6 (quoting Anderson Opinion at 5); *see also* ROD App'x B at 1; Giacona Decl. Ex. E (Anderson Opinion).  The Anderson Opinion withdrew M-Opinion 37059 ("Jorjani Opinion"), originally issued in December 2020 by then-Solicitor Daniel H. Jorjani, which addressed the weighing of impacts under 43 U.S.C. § 1337 on other uses of the OCS.  Giacona Decl. ¶ 12.

## II.    Review of Existing Leases

On his first day in office for his second term, President Trump issued the Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for*

---

[3] The Anderson Opinion is also available online.  Off. of the Solicitor, U.S. Dep't of the Interior, *M-37067, Sec'y's Duties under Subsection 8(p)(4) of the OCSLA When Authorizing Activities on the OCS* (2021), http://doi.gov/sites/doi.gov/files/m-37067.pdf.

[4] "M-Opinions . . . constitute legal interpretations that are binding on all Department officials, until such time as they are repealed or modified by either the Secretary [of the Interior], the Deputy Secretary [of the Interior], or the Solicitor."  Off. of the Solicitor, U.S. Dep't of the Interior, *M-Opinion Review* (Feb. 28, 2025), https://www.doi.gov/sites/default/files/documents/2025-03/m-opinion-suspension-review0.pdf; *see* Dep't of the Interior, Department Manual, 209 DM 3.2(A)(11), https://www.doi.gov/document-library/departmental-manual/209-dm-3-office-solicitor-secretarial-officers.

*Wind Projects* ("Presidential Wind Memo"), 90 Fed. Reg. 8663 (Jan. 20, 2025).  Giacona Decl. ¶ 9; *id.*, Ex B.  Section 1 of the Presidential Wind Memo directs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases for such removal, and submit a report with recommendations to the President."  Giacona Decl. ¶ 9 (quoting Presidential Wind Memo); *see also id.*, Ex. B.

In May 2025, Gregory Zerzan, the Acting Solicitor of the Department of the Interior, issued M-Opinion 37086 ("Zerzan Opinion").[5]  Giacona Decl. ¶ 12; *id.*, Ex. D at 1 (Zerzan Opinion).  That opinion withdrew the Anderson Opinion and reinstated the Jorjani Opinion.  Zerzan Opinion at 3; Giacona Decl. ¶ 12.  The Zerzan Opinion calls for a re-evaluation of agency actions that relied on the Anderson Opinion's interpretation of 43 U.S.C. § 1337(p)(4).  Giacona Decl. ¶ 12.  As part of its re-evaluation for this Project, BOEM has determined that it may not have fully complied with the § 1337(p)(4) factors and thus it intends to reconsider that analysis and make a new decision on the COP.  Giacona Decl. ¶¶ 13-14.

 In July 2025, the Secretary of the Interior issued Secretary's Order 3437.  Giacona Decl. ¶ 11.  Section 5(c) of that Order directed the Department of the Interior's Solicitor's Office to reconsider whether remand is appropriate in any cases challenging Department approvals associated with wind projects.  *Id.*

---

[5] The Zerzan Opinion is also available online.  Off. of the Solicitor, U.S. Dep't of the Interior, *M-37086, Withdrawal of Solicitor's Op. M-37067 and Reinstatement of M-Op. 37059, Sec'y's Duty to Prevent Interference with Reasonable Uses of Exclusive Econ. Zone, the High Seas, and the Territorial Seas in Accordance with OCSLA Subsection 8(p), Alternate Energy-related Uses on the OCS* (2025), https://www.doi.gov/sites/default/files/documents/2025-05/m-37086.pdf.

### III.        Plaintiffs' case

Plaintiffs filed their Complaint in July 2025, alleging violations of the MMPA, ESA, NEPA, OCSLA, CZMA, and Administrative Procedure Act ("APA").  Compl. ¶ 1, Dkt. No. 1.[6] Plaintiffs' OCSLA claim alleges violations of 43 U.S.C. § 1337(p)(4).  *Id.* ¶¶ 220-23.  They allege that BOEM failed to protect the national security interest of the United States, *id.* ¶ 220, and that the Project will interfere with reasonable economic uses of the Atlantic OCS, *id.* ¶ 221. Among other things, Plaintiffs seek a court order vacating and setting aside BOEM's decision to approve the Atlantic Shores COP.  *Id.* ¶¶ 237-38.  Federal Defendants have not yet answered the Complaint, and the Court has not entered a case management schedule.[7]

## LEGAL STANDARD

Agencies have inherent authority to reconsider past decisions and to revise or replace them.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Wallish v. U.S. Dep't of Def.*, No. 24-cv-00616, 2025 WL 1580702, at *2 (D.D.C. June 4, 2025) ("Administrative agencies have the inherent power to reconsider their own decisions through a voluntary remand.").  An agency may therefore "request a remand, [even] without confessing error, to reconsider its previous position."  *SKF USA, Inc. v United States*, 254 F.3d 1022, 1028 (Fed. Cir.

---

[6] In January 2025, the same Plaintiffs, except for one, brought suit in the United States District Court of New Jersey challenging BOEM's, NMFS's, and the Environmental Protection Agency's environmental review, consultation, authorizations and approvals associated with the Atlantic Shores Project.  *See Save Long Beach Island, et al. v. U.S. Dep't of Com., et al.*, No. 3:25-cv-00240 (D.N.J.) ("*SBLI I*"), Dkt. No. 1 ¶ 1.  There, Plaintiffs similarly brought claims under the MMPA, ESA, NEPA, OCSLA, CZMA, and APA.  *See, e.g.*, *SBLI I*, Dkt. No. 19 ¶ 1. But in June 2025, and before Federal Defendants responded to the complaint, Plaintiffs voluntarily dismissed the case and subsequently filed a nearly identical complaint in this Court. *See SBLI I*, Dkt. No. 26.

[7] To the extent the Court denies Federal Defendants' motion for remand and stay, Federal Defendants request their deadline to respond to Plaintiffs' complaint be fourteen days from the Court's order on this motion.

2001); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).  Courts "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'"  *Util. Solid Waste*, 901 F.3d at 436 (citation omitted); *see Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386-87 (D.C. Cir. 2017) (citing cases); *see also Edward W. Sparrow Hosp. Ass'n v. Sebelius*, 796 F. Supp. 2d 104, 107 (D.D.C. 2011) (noting that motions for voluntary remand are "usually granted"); *Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962).

Voluntary remands are generally only refused "when the agency's request is frivolous or made in bad faith[,]" *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA*, 254 F.3d at 1029), or where "remand would unduly prejudice the non-moving party[,]" *Utility Solid Waste*, 901 F.3d at 436.  *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 97-98 (D.D.C. 2019).  "[I]t would be 'an abuse of discretion to prevent an agency from acting to cure . . . legal defects.'"  *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (omission in original) (quoting *Citizens Against the Pellissippi Pkwy. Extension v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004)).

## ARGUMENT

BOEM is reconsidering its prior COP approval for the Atlantic Shores Project. Specifically, the agency is reassessing its consideration of OCSLA subsection 8(p)(4)'s factors. The Court should therefore remand the COP approval to BOEM and stay the litigation pending the completion of BOEM's reconsideration.

**I.    Voluntary remand is appropriate given BOEM's ongoing re-evaluation of the COP approval.**

The Court should remand to BOEM its decision to approve the COP for the Atlantic Shores Project because the agency is reconsidering its prior decision.  *See Limnia*, 857 F.3d at

386-87 (emphasizing "[t]he leading voluntary remand cases confirm that agency reconsideration of the action under review is part and parcel of a voluntary remand").  Remand is appropriate where an agency has identified a "substantial and legitimate" concern about a prior decision. *Code v. McHugh*, 139 F. Supp. 3d 465, 468 (D.D.C. 2015) (citation omitted).  "[C]ourts generally should not stand in the way of the agencies' remediation of their own mistakes."  *The Last Best Beef*, 506 F.3d at 340; *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (articulating courts preference "to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete").  "Otherwise judicial review is turned into a game in which an agency is 'punished' for procedural omissions by being forced to defend them well after the agency has decided to reconsider."  *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015) (quoting *Mineta*, 375 F.3d at 416).

A.    BOEM's re-evaluation of its COP approval is a "substantial and legitimate" reason warranting remand.

BOEM's concerns are substantial and present legitimate reasons that justify remand.  The President directed the agency to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases." Presidential Wind Memo at 1; Giacona Decl. ¶ 9.  Separate from the wind energy lease review, Interior Acting Solicitor also directed Interior, including BOEM, to re-evaluate agency decisions—such as the COP approval here—that relied on the Anderson Opinion and its interpretation of OCSLA subsection 8(p)(4).  Giacona Decl. ¶¶ 10-11.  Consistent with that

Presidential directive, BOEM is undertaking a lease review and re-evaluating its decision to approve the COP for the Atlantic Shores Project.  Giacona Decl. ¶ 13.

Specifically, BOEM has determined that, for purposes of OCSLA subsection 8(p)(4), the COP approval for the Atlantic Shores Project "may have failed to account for all the impacts that the Atlantic Shores South Projects 1 and 2 may cause."  Giacona Decl. ¶ 14.  And BOEM has also determined that record documents on which it relied for purposes of its OCSLA conclusion may have "understated or obfuscated impacts that were then improperly weighed in reaching the determinations" under section 8(p)(4).  *Id.*  As a result, BOEM's COP approval may not have adequately ensured that all activities in the COP will be carried out in a manner that provides for the section 8(p)(4) factors.  *Id.* ¶¶ 13-14.

BOEM's concerns are "substantial and legitimate," *McHugh*, 139 F. Supp. 3d at 468 (citation omitted).  Therefore, BOEM is seeking a remand as it completes its reconsideration of its Atlantic Shores COP approval.  BOEM intends to issue a new COP decision at the completion of its review (and any associated technical and environmental reviews), which will either approve, disapprove, or approve with conditions.  Giacona Decl. ¶ 15.  BOEM's intent to take further agency action justifies remand here.  *Util. Solid Waste*, 901 F.3d at 436; *FBME Bank Ltd*, 142 F. Supp. 3d at 73 ("When an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons." (quoting *Mineta*, 375 F.3d at 416)).

With respect to BOEM taking a new agency action, BOEM will also need to consider the sufficiency of its environmental review, including its reviews under NEPA, the National Historic Preservation Act, and ESA.  Giacona Decl. ¶ 15.  Remanding the COP approval to BOEM will allow the agency to complete its reconsideration of the COP approval and ensure that it is

confident in its compliance with OCSLA and other applicable legal authority.  This also may

address some or all of Plaintiffs' concerns in this case, thus obviating the need for further

litigation.  Those possibilities further support remand.  *See, e.g.*, *NAACP v. Trump*, 298 F. Supp.

3d 209, 244 (D.D.C. 2018) (voluntary remand appropriate where there is a "possibility that the

agency will be able to substantiate its decision" (cleaned up)), *aff'd and remanded sub nom.*

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020).

### B.    A remand would conserve party and Court resources.

In addition to BOEM's "substantial and legitimate" concerns justifying remand, a remand

would also conserve party and judicial resources.  Viewed through the lens of the APA, BOEM

will be making a new agency action, supplanting the BOEM agency action that Plaintiffs

challenge.  Continuing to litigate the merits of Plaintiffs' current claims would waste the Court's

and parties' resources.  *Ethyl Corp.*, 989 F.2d at 524; *FBME Bank*, 142 F. Supp. 3d at 73

(concluding interests of judicial economy counseled in favor of voluntary remand); *Carpenters*

*Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 134-35 (D.D.C. 2010) (citing cases).  Under

these circumstances, granting a remand while BOEM conducts its reanalysis and issues a new

COP decision is warranted.  *Cf. Mineta*, 375 F.3d at 418 (reversing district court's denial of

voluntary remand to conduct additional NEPA analysis).

### C.    Remand would not unduly prejudice Plaintiffs or Atlantic Shores.

Nor would a remand prejudice Plaintiffs or Atlantic Shores.  To begin, Federal

Defendants have not yet answered the Complaint, and no case management schedule has been

set.  There is therefore no prejudice from delay of a decision on the merits, as no decision is

imminent.  But even assuming it were, "delay of potentially unnecessary litigation is not the sort

of undue prejudice that defeats a request for voluntary remand."  *Friends of Animals v. Williams*,

628 F. Supp. 3d 71, 78 (D.D.C. 2022).  Indeed, Plaintiffs acknowledge that their interests are not prejudiced as they support Federal Defendants' request for voluntary remand.  Atlantic Shores also would not be prejudiced because Project construction has not yet commenced and is not imminent.  The Project lacks all the necessary federal approvals, including the OCS Air Permit from the Environmental Protection Agency ("EPA") which has been remanded to that agency for re-evaluation.  Giacona Decl. ¶ 19.  Because there would be no imminent construction delay, remand and re-evaluation, alone, would not prejudice Atlantic Shores.

Atlantic Shores may be concerned that BOEM will make a different decision than its prior COP approval, but those concerns are speculative and unripe.  "Ongoing agency review renders an agency order non-final and judicial review premature."  *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012).  If Atlantic Shores is dissatisfied with the results of BOEM's reanalysis—and assuming other jurisprudential requirements are met—the company would be free to challenge that outcome.

    D. <u>The Court should decline to impose deadlines for the remand.</u>

Finally, the Court should not impose an artificial deadline for the remand.  "Deadlines become a substantive constraint on what an agency can reasonably do."  *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 606 (9th Cir. 2014).  And it is not clear that anyone is "ultimately well-served" when "tight deadlines" are imposed on agencies' future analyses.  *Id.*; *see also Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 189 n.12 (D.C. Cir. 2017) (denying request that agency complete remand work by a specific deadline and file six-month progress reports).  BOEM intends to thoroughly re-evaluate the COP approval and any other issues that it identifies during its re-evaluation.  *See* Giacona Decl. ¶ 17.  The Court should decline to set deadlines on remand work because this may affect the agency's ability to conduct a proper,

thorough analysis and could impede the agency's work.  BOEM's request for voluntary remand should therefore be granted as requested.

## II.    The Court should stay the case.

The Court should, in the interest of judicial economy, also stay all claims pending completion of BOEM's reconsideration.  A stay would avoid wasting judicial and party resources, as BOEM's reconsideration of its COP approval may result in it withdrawing or modifying the approval, which would moot Plaintiffs' OCSLA claim as well as directly impact— if not outright moot—Plaintiffs' NEPA, ESA, MMPA, and CZMA claims.

Courts have "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In deciding whether to grant a stay, this Court considers three factors: (1) "whether a stay would promote efficient use of the court's resources"; (2) "the moving party's need for a stay — that is, the harm to the moving party if a stay does not issue"; and (3) "harm to the nonmoving party if a stay does issue [.]"  *Allen v. District of Columbia*, No. 20-CV-02453, 2024 WL 379811, at *3 (D.D.C. Feb. 1, 2024) (citation omitted); *Nat'l PFAS Contamination Coal. v. United States Env't Prot. Agency*, No. 22-cv-132, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023) (same); *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75, 2023 WL 2838131, at *2 (D.D.C. Apr. 7, 2023) (same).

Consideration of these three factors supports a stay pending completion of BOEM's re-evaluation of its COP approval on remand.

1. <u>A stay would promote judicial economy and the orderly course of justice.</u>

A stay of litigation pending completion of BOEM's reconsideration would further the interests of judicial economy. In short, it would make little sense to litigate the merits of these claims when BOEM's reconsideration of its COP approval may result in an outcome that moots, or necessitates changes in, both BOEM's and NMFS's challenged decisions.

On point here, the D.C. Circuit has found that a stay is appropriate where "there are legitimate developments that could obviate the need for judicial review, such as when a new administration chooses to reevaluate its litigating position or when an agency plans to reconsider a challenged rule." *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (per curiam); *see id.* ("It is a cardinal virtue of Article III courts to avoid unnecessary decisions and to promote voluntary resolutions where appropriate. Allowing resolution of a dispute without the court's intervention conserves judicial resources and comports with our theoretical role as the governmental branch of last resort.") (cleaned up); *see also S. Yuba River Citizens League v. NMFS*, No. 2:13-cv-00059, 2013 WL 4094777, at *9 (E.D. Cal. Aug. 13, 2013) (granting a stay because, "the outcome of the [agency's] proceedings will impact the final resolution of this case" and, "without a stay, the parties will be required to litigate, and the [c]ourt to adjudicate, the same fundamental issues that are already being reconsidered") (cleaned up); *Nat. Res. Def. Council v. Kempthorne*, No. 1:05-CV-01207, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015) ("The efficiencies of Federal Defendants' proposed [stay] are obvious . . . . Depending on the outcome of the [agency's action on remand], the Court's intervention may not be needed at all. Even if further judicial intervention is sought, the Court and the parties would benefit from an updated record that may address some of the numerous issues raised in this case[.]").

Indeed, in a situation like this, the interests of judicial economy favor a stay of litigation because the outcome of BOEM's reconsideration on remand may moot or narrow Plaintiffs' claims. *See, e.g.*, *IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Ams.*, 402 F. Supp. 2d 289, 292 (D.D.C. 2005) ("[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." (citation omitted)); *Allen*, 2024 WL 379811, at *5 (granting a stay because it would "promote efficient use of the court's resources[,]" as the "court's limited resources are not well spent adjudicating . . . disputes that may be obviated [by appeal proceedings]"); *Nat'l PFAS Contamination*, 2023 WL 22078, at *5 (granting a stay where the agency announced plans to promulgate a rule that was expected to render the case moot).

## 2. Absent a stay, Federal Defendants would face significant hardship.

A stay of litigation pending the completion of the remand of BOEM's COP approval would avoid significant prejudice to Federal Defendants. Absent a stay, Federal Defendants would be forced to expend limited agency resources on litigating the merits of an agency decision that is being reconsidered and thus may change from its present form. *See, e.g.*, *S. Yuba*, 2013 WL 4094777, at *9 ("[F]orcing [the government] Defendants to proceed in the instant litigation, when it is . . . clear that the outcome of the administrative proceedings will impact the final resolution of this case, would be prejudicial.") (cleaned up); *Nat. Res. Def. Council*, 2015 WL 3750305, at *8 (granting a stay, in part, because "federal agencies would be required to dedicate staff time and resources to litigating the merits of [p]laintiffs' claims, [when] those resources could be re-directed to other efforts"); *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (noting that litigation "exacts heavy costs in terms of efficiency and expenditure of

valuable time and resources that might otherwise be directed to the proper execution of the work of the Government").

### 3.    A stay would not prejudice Plaintiffs or Atlantic Shores.

A stay pending the completion of BOEM's reconsideration is unlikely to cause prejudice to the non-moving parties (Plaintiffs and Atlantic Shores).  To begin, the outcome of BOEM's re-evaluation may obviate or narrow the need for litigation, so staying the case would reduce potentially unnecessary litigation burden on *all* parties.  Absent a stay, Atlantic Shores would be litigating challenges to an approval of a construction plan and associated authorizations that may later be modified.

Further, neither Plaintiffs nor Atlantic Shores will suffer any meaningful prejudice from a stay of litigation where multiple practical and legal impediments are preventing Atlantic Shores from even beginning construction of the Project.  *See* Giacona Decl. ¶ 19.  Atlantic Shores recently notified BOEM that, if construction proceeds at all, the construction schedule will be significantly delayed, with the earliest anticipated start date for offshore construction being in 2027.  *See* COP Volume I at 4-3, Table 4.1-1 (anticipated construction schedule initially provided in Atlantic Shores' COP, showing a Q2-2026 start date for offshore construction activities);[8] Giacona Decl., Ex. G (May 29, 2025, letter from Atlantic Shores notifying BOEM of an "anticipated 270-day deviation in their [Project] construction schedules and any related reports and deliverables under the approved [COP]").  It is also unclear whether the Project will obtain the necessary approvals that are necessary to begin construction.  As noted above, earlier this year, EPA's Environmental Appeals Board remanded Atlantic Shores' OCS Clean Air Act

---

[8] COP Volume 1 is available at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Atlantic%20Shores%20South_Volume%20I_Project%20Description_05-01-2024.pdf.

permit—which is legally required for construction on the Project to proceed—back to EPA, the issuing agency, for revaluation. Giacona Decl. ¶ 19.[9] The remand of Atlantic Shores' Clean Air Act permit is still pending. Additionally, on August 13, 2025, per Atlantic Shores' request, the New Jersey Board of Public Utilities ("NJBPU") terminated its 2021 Offshore Renewable Energy Certificate Order, which approved the Project as a Qualified Offshore Wind Project. *See* Giacona Decl. Ex. H. Atlantic Shores' petition to terminate the NJBPU Order was based on many factors which led it to conclude that "continuing to advance the Project is impracticable at this time[.]" *Id.* at 4. Some of the factors Atlantic Shores based its request on included "inflationary pressures, increased interest rates, Russia's invasion of Ukraine, and a global surge in [offshore wind] demand that strained the supply chain and significantly drove up costs[.]" *Id.* at 3; *see also* Adrijana Buljan, *New Jersey, Atlantic Shores Terminate OREC Contract for 1.5 GW Offshore Wind Project*, OffshoreWind.biz (Aug. 19, 2025).[10]

But even if a stay may result in some prejudice to Plaintiffs or Atlantic Shores, the countervailing interests of the Court and Federal Defendants, as discussed above, outweigh any such concerns. *See, e.g.*, *Allen*, 2024 WL 379811, at *5 (granting a stay where "any harm [the non-moving party] may suffer is outweighed by the harm to the [government] in the absence of a stay and this court's judicial economy gains"); *Nat. Res. Def. Council*, 2015 WL 3750305, at *14 (finding plaintiffs' claims of prejudice "do not overcome the potential efficiencies to be gained

---

[9] EPA Environmental Appeals Board Remand Order is available online. *Atlantic Shores Offshore Wind, LLC*, Permit No. OCS-EPA-R2 NJ 02OCS, Appeal No. 24-01 (EAB Mar. 14, 2025), https://yosemite.epa.gov/oa/eab_web_docket.nsf/9C7B7CF33923032185258C4D0058F4A7/$Fil e/Atlantic%20Shores%20Order%20Granting%20Motion%20for%20Voluntary%20Remand,%20 FINAL.pdf.

[10] Article available online at https://www.offshorewind.biz/2025/08/19/new-jersey-atlantic-shores-terminate-orec-contract-for-1-5-gw-offshore-wind-project/.

from the imposition of a brief stay"); *see also Friends of Animals*, 628 F. Supp. 3d at 78 ("Given the resource efficiencies inherent in the possibility of [the agency] providing [the plaintiff] . . . the relief it seeks without the need for further litigation, this delay of potentially unnecessary litigation is not the sort of undue prejudice that defeats a request for voluntary remand.").

Therefore, the Court should stay the litigation pending completion of BOEM's re-evaluation because a stay would best serve the interests of judicial economy, avoid a strain on limited government resources, and would not result in any undue prejudice.

## **CONCLUSION**

For these reasons, the Court should grant Federal Defendants' motion for voluntary remand of BOEM's COP approval for the Atlantic Shores Project.  The Court should also stay the litigation pending BOEM's review of the COP approval and until a new decision is issued after reconsideration.

DATE: September 26, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Amber Dutton-Bynum*
AMBER DUTTON-BYNUM
Trial Attorney (D.C. Bar No. 1778319)
Natural Resources Section
(202) 330-2649
amber.dutton-bynum@usdoj.gov
MICHELLE M. SPATZ
Trial Attorney (D.C. Bar No. 1044400)
Wildlife & Marine Resources Section
(202) 598-9741
michelle.spatz@usdoj.gov

*Counsel for the United States*

17