**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SAVE LONG BEACH ISLAND, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF COMMERCE, *et al.*, <br><br> Defendants, <br><br> and <br><br> ATLANTIC SHORES OFFSHORE WIND, LLC, <br><br> Intervenor-Defendant. | Case No. 25-cv-2211 (JMC) |

## <u>MEMORANDUM OPINION & ORDER</u>

The Secretary of the Interior has been granted authority under the Outer Continental Shelf Lands Act ("OCSLA") to "administer the provisions of" the Act "relating to the leasing of the outer Continental Shelf." 43 U.S.C. § 1334(a). This delegated authority extends to issuing leases through the Bureau of Ocean Energy Management ("BOEM") to "produce or support production . . . of energy from sources other than oil and gas," such as wind power. *Id.* § 1337(p)(1)(C); *see* 30 C.F.R. § 585.100. Before conducting activities on a specific lease, the lessee must receive various approvals from BOEM, including approval of a Construction and Operations Plan ("COP"). *See, e.g.*, 30 C.F.R. §§ 585.600, 585.605, 585.620.[1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion and order, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

Plaintiffs are various individuals and organizations with ties to Long Beach Island in New Jersey. They allege that BOEM and other federal agencies failed to comply with various statutes and regulations when issuing approvals for an offshore wind farm project on leases belonging to Intervenor-Defendant Atlantic Shores Offshore Wind, LLC, including Atlantic Shores' COP for both leases. *See generally* ECF 1. Atlantic Shores' COP was formally approved by BOEM on or around October 1, 2024, in the waning days of the Biden Administration. *See* ECF 4-2 ¶ 18. Several months later, on his first day in office, President Trump signed a memorandum which directed the Secretary of Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases." Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing & Review of the Federal Government's Leasing & Permitting Practices for Wind Projects, 90 Fed. Reg. 8363, 8363 (Jan. 20, 2025) [hereinafter "Wind Memorandum"].[2] The Secretary of Interior subsequently issued an order directing the Solicitor of the Department of the Interior to "conduct a review of any pending litigation[] . . . challenging an approval of a wind or solar project and identify cases where remand of any . . . approvals to the Department would be appropriate." Secretary of the Interior Order No. 3437, *Ending Preferential Treatment for Unreliable, Foreign-Controlled Energy Sources in Department Decision Making* (July 29, 2025); ECF 13-4 at 6 (attaching a copy of the order). In any such remand, the Department has been instructed to ensure that the prior approvals "were not based on any legally or factually unsupported findings or

---

[2] Portions of the Wind Memorandum not discussed in this opinion have been held to violate the Administrative Procedure Act and have been vacated by another district court. *See New York v. Trump*, 811 F. Supp. 3d 215, 225–26 (D. Mass. 2025), *appeal dismissed*, No. 26-1174 (1st Cir. Jun. 15, 2026), ECF 36. The district court in that case addressed the memorandum's direction to impose an "indefinite moratorium on the issuance of all new or renewed approvals" for offshore wind projects. *Id.* at 227; *see also id.* at 226–27 (describing the vacated "Wind Order" as "the Agency Defendants' decision to suspend issuing all authorizations related to wind energy projects").

conclusions" and "are consistent with either the most recent judicial interpretation of the law or the Department's interpretation of the best reading of the applicable law." ECF 13-4 at 6–7.

The Federal Defendants state that BOEM is now "undertaking a reconsideration of" Atlantic Shores' COP approvals, ECF 13-1 ¶ 15, and have moved to remand the decision to the agency and stay proceedings in this Court, ECF 13 at 7. Plaintiffs support the request. *See, e.g.*, ECF 28 at 2. Atlantic Shores alone opposes the request. *See* ECF 18 at 12. The Court will **GRANT** Federal Defendants' motion for the reasons stated below.

Courts have "broad discretion to grant or deny an agency's motion to remand," and "generally grant" such motions "so long as the agency intends to take further action with respect to the original agency decision on review." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). "Remand has the benefit of allowing agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Id.* (citing *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). The confession of error is not necessary to obtain a voluntary remand, but "the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017). Courts evaluate "whether remand would unduly prejudice the non-moving party," or if the "request appears to be frivolous or made in bad faith." *Util. Solid Waste Activities Grp.*, 901 F.3d at 436. However, if the agency "genuinely intends to reconsider, re-review, or modify its original decision," *Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 719 (D.C. Cir. 2021), and if the agency's "concern is substantial and legitimate, a remand is usually appropriate," *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008).

Remand is appropriate here in the interest of judicial economy and in light of the lack of prejudice to Atlantic Shores. BOEM has stated that it "inten[ds] to reconsider, re-review, or

modify" at least some of the "original agency decision[s] that [are] the subject of the legal challenge," *Limnia, Inc.*, 857 F.3d at 387, namely Atlantic Shores' COP approvals, *see* ECF 36-1 ¶ 5. BOEM believes that the agency's prior explanation of "how the COP approvals complied with" specific factors under the OCSLA "may have failed to account for all the impacts" that the Atlantic Shores project may cause. *Id.* Further, the agency states that "[o]ther record documents, such as the Environmental Impact Statement, may have also understated or obfuscated impacts that may have then been improperly weighed in reaching the determinations in the OCSLA memo." *Id.* In *Town & County of Nantucket v. Burgum*, another judge in this district faced with BOEM's similar articulation of "potential issues with the analysis underlying [its] original decision" regarding a different wind farm approval found these concerns to be "credibl[e]" and justified "'deferral of review,'" given that "reconsideration may well . . . [']necessitate [a] substantively different legal analysis and would likely moot the analysis [the court] could undertake if deciding the case now.'" No. 25-cv-906, 2025 WL 3120419, at *2 (D.D.C. Nov. 4, 2025) (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388–89 (D.C. Cir. 2012)). The Court finds the *Nantucket* approach persuasive here.

Atlantic Shores argues that these concerns cannot qualify as "substantial and legitimate" concerns because, in its view, "Interior has no legal authority to reconsider or modify the approvals." ECF 18 at 24. The issue of the agency's authority to reconsider an approval like that of the COP was not discussed by the *Nantucket* court. However, "[i]t is undisputed that administrative agencies have inherent power to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Sierra Club*, 560 F. Supp. 2d at 23. This reconsideration authority is not boundless. "[I]nherent reconsideration authority does not apply in cases where Congress has spoken" by "provid[ing] statutory authority to rectify the

agency's mistakes." *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014).[3] In such cases, the agency's reconsideration authority is limited to the "mechanism[s]" that Congress has provided. *Id.*

Atlantic Shores points to various ways that it believes that Congress has limited BOEM's authority to reconsider a COP approval, but none speak with the requisite specificity to undercut Defendant's reconsideration authority. It identifies statutory provisions discussing Interior's power to create regulations regarding the suspension of activities on leases, and specific circumstances under which BOEM may revoke or cancel a lease, *see* ECF 18 at 24–25 (citing 43 U.S.C. §§ 1334(a)(1), (a)(2), 1341(c)–(d)), but these provisions do not speak to, let alone purport to limit, BOEM's ability to reconsider a COP approval. As Federal Defendants note, the decision whether to grant (or revoke) a lease is a separate and distinct process from the decision to approve a COP, and Congress's statutory limitations on lease revocation do not necessarily speak to any limitations on COP reconsideration. ECF 22 at 9. Nor do the relevant provisions in Atlantic Shores' leases appear to provide an express limitation on COP reconsideration. ECF 18 at 24–25 (identifying Sections 1, 2, 3, and 8 of the leases). If anything, the lease sections indicate that Atlantic Shores' rights to operate on the leased areas are contingent on BOEM's approval of its COP, and do not speak to BOEM's ability to revise or correct its COP approval. *See* ECF 22-2 at 2–3 (noting that "[t]his lease does not, by itself, authorize any activity within the leased area," and that the right to "conduct activities in the area" is contingent on those activities being "described in a . . . COP that has been approved by the Lessor").

Next, Atlantic Shores also argues that BOEM's ability to reconsider the COP is limited on remand by a preliminary injunction issued in parallel litigation regarding various actions taken by

---

[3] In addition, an agency's exercise of this inherent reconsideration authority must generally be "timely." *Ivy Sports Med., LLC*, 767 F.3d at 86. No party has claimed that BOEM's reconsideration is untimely under this framework.

the Government with respect to offshore wind projects. ECF 33 at 2; *see RENEW Ne. v. U.S. Dep't of Interior*, No. 25-cv-13961, 2026 WL 1078282, at *5 (D. Mass. Apr. 21, 2026) (describing the challenged agency actions). One of Federal Defendants' stated reasons for remand is for the agency to reconsider the COP approval pursuant to a weighting of statutory factors laid out in a Department of Interior memorandum issued in May 2025, known as the "Zerzan Opinion." ECF 13 at 11. The Zerzan Opinion had replaced a prior opinion—the "Anderson Opinion"—which BOEM relied on when making its decision to initially approve Atlantic Shores' COP. *Id.* at 11. But in the *RENEW Northeast* litigation, the district court enjoined Defendants from, among other challenged actions, "implementing the Zerzan []Opinion . . . or otherwise taking any action to treat [it] as binding and authoritative or to re-evaluate agency action taken in reliance upon [the Anderson Opinion]."[4] *RENEW Ne.*, No. 25-cv-13961, ECF 104 at 3 (Jun. 16, 2026). Atlantic Shores claims that the *RENEW Northeast* injunction means that there is nothing for Federal Defendants to do on remand, and that they thus lack a substantial and legitimate basis to remand. ECF 33 at 2. But Atlantic Shores ignores that the *RENEW Northeast* injunction did not prohibit *all* reevaluation of agency action by BOEM and the Federal Defendants. The preliminary injunction order does not extend to "any lawful action that is not based on the challenged Agency Actions as described" in the *RENEW Northeast* order and in the accompanying memorandum opinion. ECF 33-1 at 3. Accordingly, the Federal Defendants' declarant states that the Department of the Interior is presently reviewing Atlantic Shores' COP approvals without "relying on [the Zerzan Opinion] to engage in its re-evaluation of the decision to approve the COP." ECF 36-1 ¶ 4. Further, he states that the agency has other grounds to reconsider the COP beyond the Zerzan Opinion, including, as

---

[4] The *Renew Northeast* injunction applies to all the plaintiffs in that action and their members, one of which is Atlantic Shores. *See* ECF 33 ("Atlantic Shores is a member of Alliance for Clean Energy New York, a plaintiff in the *RENEW Northeast* litigation, and the District of Massachusetts' preliminary injunction therefore applies to Atlantic Shores and its Construction and Operation Plan (COP)."). The Federal Defendants do not dispute this point.

discussed above, that the "COP approvals . . . may have failed to account for all of the impacts that the" projects may cause. *Id.* ¶ 5. The Court agrees with Federal Defendants that their reasons for reconsideration are not restricted to the rationale which is prohibited by the *RENEW Northeast* injunction.

Finally, the Court does not find that any hardship to Atlantic Shores caused by remand to the agency "outweigh[s] the[] institutional interests in the deferral of review." *Am. Petroleum Inst.*, 683 F.3d at 389. The "hardship caused by that deferral must be immediate and significant." *Id.* The Court "need not consider any prejudice to Plaintiff[s], [who] support[] a remand." *Town & Cnty. of Nantucket*, 2025 WL 3120419, at *2. Atlantic Shores argues that remand would "severely prejudice" it, by "threaten[ing] th[e] investments" that it has made in "obtaining the COP and other necessary project authorizations," and that any additional modifications to the COP or revocation of the COP could mean the loss of other approvals and the potential termination of the project. ECF 18 at 31–32. Atlantic Shores states that it has "enter[ed] into extensive contracts for developing, permitting, engineering, and preparing for construction" on its projects." ECF 18-1 ¶ 23.

But the "cloud of uncertainty" that Atlantic Shores complains of, ECF 18 at 33–34, is not "caused by" the Court's decision to remand to the agency. *Am. Petroleum Inst.*, 683 F.3d at 389. As BOEM has stated, it is already reconsidering the COP, whether this Court remands or not. ECF 36-1 ¶ 4; ECF 13-1 ¶ 15 ("The Department is undertaking a reconsideration of the COP."). Given that "an agency does not need a remand to reconsider a challenged [action]—it can do so at any time, including while challenges are pending before this court," *Town & Cnty. of Nantucket*, 2025 WL 3120419, at *2 (quoting *Utah ex. rel. Cox v. EPA*, No. 23-1157, 2025 WL 1354371, at *5 (D.C. Cir. May 2, 2025)), Atlantic Shores would face these "potential costs" and regulatory uncertainty "regardless of whether [the Court] grant[s] Federal Defendants' motion, and given this,

such costs hardly constitute undue prejudice" caused by the remand, *id.* (quoting *Clean Wis. v. EPA*, 964 F.3d 1145, 1175–76 (D.C. Cir. 2020)). Despite Atlantic Shores' speculation that remand will inevitably result in a modification or revocation of the COP, BOEM has not yet taken any steps to "require[]" Atlantic Shores "to engage in, or to refrain from, any conduct," which supports a deferral of review and a lack of prejudice to Atlantic Shores. *Id.* at *2 (quoting *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007)). Nor does the Court find that the act of remanding will change that conclusion, given that the remand will be without vacatur, meaning that the COP approvals will be effective until the agency takes affirmative action to modify or revoke them.[5] *Cf. Devia*, 492 F.3d at 427 ("[B]ecause the [agency] granted the license, and because a decision to hold the petitions in abeyance would not invalidate it, each intervenor would remain free to conduct its business as it sees fit."). To the extent that Atlantic Shores is complaining that it is not "free to conduct" construction of the project "as it sees fit," *id.*, these restrictions do not come from the remand or reconsideration of the COP approval—which again, is not presently revoked—but from other federal government actions not challenged before this Court. *See* ECF 18-1 ¶ 23 (stating that "Atlantic Shores has been forced to cancel many of its construction-related contracts due to the uncertainties caused by the *Presidential Wind Memorandum*" (emphasis added)); *id.* at ¶ 26 (stating that the EPA recently remanded the Project's final Clean

---

[5] Federal Defendants' motion did not say whether the requested remand by this Court would be with or without vacatur. *See* ECF 13. But the Parties' briefing appears to assume that the remand is without vacatur. For example, Federal Defendants argue that a "remand . . . would not cause any prejudice to Atlantic Shores because it would not cause any changes to the Project's status quo on the ground," given that "BOEM has not taken any action to suspend lease activities or to revoke the prior COP approval, which means BOEM's reconsideration (and any remand) does not preclude Atlantic Shores from engaging in any on-the-ground activities." ECF 22 at 16; *see also* ECF 18 at 23 (Atlantic Shores' memorandum discussing the standard for "voluntary remand without vacatur"). Federal Defendants' arguments regarding prejudice would not make sense if the remand was intended to vacate Atlantic Shores' existing COP approval. Further, the Court would have "reason to question whether it has authority to vacate an agency action before issue has been joined, without an administrative record, and in the absence of a request for emergency relief." *Vanda Pharms., Inc. v. FDA*, No. 19-cv-301, 2019 WL 1198703, at *2 (D.D.C. Mar. 14, 2019). As a result, the Court views Federal Defendants' request for remand as one without vacatur and declines to vacate the existing COP approvals when remanding.

Air Act permit, which is required for "construction activities," to "reevaluate" the Project). Again, Atlantic Shores faces those costs regardless of whether the Court grants the instant motion for remand regarding the COP. Of course, should BOEM reach a decision that Atlantic Shores "finds objectionable, it retains the opportunity to challenge the" action before this Court. *Town & Cnty. of Nantucket*, 2025 WL 3120419, at *2. Remand without vacatur is appropriate.

Given the remand, the Court will also exercise its' "broad discretion to stay proceedings" during the pendency of the remand. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The factors regarding whether to issue a stay, including prejudice to the various parties, significantly overlap with those analyzed for voluntary remand. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (noting that a court must "weigh competing interests and maintain an even balance," including whether "there is even a fair possibility that the stay . . . will work damage to someone else" and if so, whether the "suppliant for a stay [has] ma[de] out a clear case of hardship or inequity in being required to go forward"); *see also S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. 2:13-cv-00059, 2013 WL 4094777, at *10 (E.D. Cal. Aug. 13, 2013) (agreeing with litigant that "there is no significant difference between these two remedies" in case where agency was reconsidering prior action and had sought either a remand or a stay to do so). For the reasons discussed above, the Court finds little hardship imposed on Atlantic Shores—the only party that objects to the remand and stay—from the Court's decision to defer review. And the interest in judicial efficiency weighs clearly in favor of a stay as it does a remand. "To be sure, remand following a decision on" the merits of Plaintiffs' challenge "would presumably come with the Court's analysis of the relevant legal issues, which might, in turn, affect the [agency's] analysis on remand." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 22-cv-1877, 2023 WL 8190792, at *2 (D.D.C. Nov. 26, 2023). But "[a]bsent evidence that an agency is skirting a statutory or regulatory timeline or is engaged in intentional delay, providing the agency with time

9

to reach a fully considered decision, and, if necessary, to reconsider a decision that it has come to doubt, does not constitute prejudicial delay—it is how the system is supposed to work." *Id.* Forcing the agency to proceed "in the instant litigation, when" the "outcome of the administrative proceedings will impact the final resolution of the case, would be prejudicial." *S. Yuba River Citizens League*, 2013 WL 4094777, at *9 (finding that a stay was also prudent to "avoid potentially inconsistent results that could occur if the pending litigation and the administrative reinitiation were to proceed simultaneously," and where the government represented that "forcing the litigation to proceed would divert scarce agency resources from the ongoing . . . consultation").

Atlantic Shores has requested that, in the event the Court grants Federal Defendants' motion, that the Court impose a 120-day deadline for the reconsideration process. ECF 18 at 38. Federal Defendants reject that deadline as arbitrary, stressing BOEM's need to "conduct a proper, thorough, and comprehensive analysis on remand." ECF 22 at 18. The district court in the *Nantucket* case declined to impose any specific deadline for reconsideration and merely required the parties to submit status reports every 60 days. *Town & Cnty. of Nantucket*, No. 25-cv-906, 2025 WL 3120419, at *2. However, the Court is cognizant that "administrative reconsideration" pursuant to an agency's inherent authority to reconsider must be "timely." *Ivy Sports Med., LLC*, 767 F.3d at 86. Further, an open-ended remand without vacatur, "can create a new problem: The agency may have little or no incentive to fix the deficient" action. *Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, No. 19-cv-2458, 2023 WL 3433970, at *13 (D.D.C. May 12, 2023). A "time-certain for" taking action also would address Atlantic Shores' concern that BOEM's new review is speculative and intended to simply halt the project through delay. *Id.* The 120-day deadline for reconsideration that Atlantic Shores suggests is not uncommon. *See id.* (collecting cases where agency action was remanded with even shorter deadlines for reconsideration); *see also Nat'l Org.*

10

*of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1381 (Fed. Cir. 2001) (imposing 120-day deadline).

In a declaration filed in September 2025, the Government stated that it was unable to provide a firm timeline on reconsideration given the status of department-level reviews at BOEM and the Department of the Interior. ECF 13-1 ¶¶ 17–19. Courts have cautioned against issuing "flat guideline deadlines when the [agency] demonstrates that additional time is necessary." *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 712 (D.C. Cir. 1974). But significant time has also passed between that declaration and the Court's decision, during which the agency may have identified a clearer sense of the timeline necessary for reconsideration.[6] Accordingly, while the Court will decline to impose a firm deadline on reconsideration at this time, it will require Federal Defendants, at the date of the next status report, to provide an updated evidentiary showing as to why a 120-day (or similar) deadline would still be infeasible given the posture of the case.

Finally, given that the Court grants the motion for remand and stays the case, the Court **DENIES** Plaintiffs' motion to set a case management schedule, ECF 28, as moot.

\*    \*    \*

For the foregoing reasons, it is hereby

**ORDERED** that Federal Defendants' Motion for Voluntary Remand and Stay, ECF 13, is **GRANTED**, and Plaintiffs' Motion to Resume Proceedings and Set Case-Management Schedule, ECF 28, is **DENIED** as moot; it is further

**ORDERED** that the case be **REMANDED** to BOEM for reconsideration of its decision and that proceedings in this Court are **STAYED** until further order of the Court; it is further

---

[6] Following the briefing of the remand motion, the Federal Defendants and Atlantic Shores engaged in several months of discussions regarding the scope of the remand. *See, e.g.*, Jun. 4, 2026 Min. Order. Further developments in related cases also necessitated additional briefing regarding the remand motion. *See* July 6, 2026 Min. Order.

**ORDERED** that, on or before October 9, 2026, the Parties shall file a joint status report indicating the status of BOEM's remand proceedings, which shall include Federal Defendants' updated rationale as to why a 120-day deadline for the conclusion of reconsideration would not be appropriate under the circumstances of this case, as well as any responses from Plaintiffs and Atlantic Shores; it is further

**ORDERED** that the Parties shall submit status reports every 60 days thereafter indicating the status of BOEM's remand proceedings; it is further

**ORDERED** that, provided that the Court does not set a firm deadline for BOEM's reconsideration, on or before 30 days following the issuance of a decision by BOEM, the Parties shall file a joint status report informing the Court if further proceedings are necessary and, if so, providing a proposed schedule for those proceedings.

**SO ORDERED.**

 

JIA M. COBB
United States District Judge

Date: August 10, 2026