**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAVE LONG BEACH ISLAND, *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>U.S. DEPARTMENT OF COMMERCE, *et al.*,<br><br>*Federal Defendants*,<br><br>and<br><br>ATLANTIC SHORES OFFSHORE WIND, LLC,<br><br>*Intervenor-Defendant*. | Case No. 1:25-cv-02211-JMC<br><br>Honorable Judge Jia M. Cobb |

## JOINT STATUS REPORT

Pursuant to the Court's Memorandum Opinion and Order dated August 10, 2026, Dkt. No. 37, the parties have conferred and submit a joint status report indicating the status of the Marine Minerals Administration's ("MMA")[1] remand proceedings, and Plaintiffs' and Atlantic Shores' position on that status.

## FEDERAL DEFENDANTS' POSITION

On September 30, 2026, MMA issued a letter to Atlantic Shores providing formal notice that the agency is reviewing its prior Construction and Operations Plan ("COP") approval for the Atlantic Shores Offshore Wind South Project. *See* Declaration of Michael D. Olsen, Exhibit A.

[1] In July 2026, the Secretary of the Interior's Order 3451 established the MMA within the Department of the Interior, and that bureau replaced the Bureau of Ocean Energy Management, or BOEM. *See* U.S. Dep't of the Interior, Secretary of the Interior, *Establishment of the Marine Minerals Administration* (July 10, 2026), https://perma.cc/63NV-V8FS.

The letter explains that MMA is assessing whether the prior COP approval complied with statutory requirements in Outer Continental Shelf Lands Act ("OCSLA"), specifically 43 U.S.C. § 1337(p)(4). Ex. A at 1. The letter further elaborates that "[a]s part of this review, MMA will consider all or part of the analyses that informed the prior COP approval[.]" *Id.* at 2. The letter outlines the steps for MMA's review, which includes the agency's preliminary evaluation of the § 1337(p)(4) factors; requests for additional information from Atlantic Shores; additional consultation with state, local, and tribal governments; and a new agency decision after completion of the review. *Id.* at 2.

The letter invited Atlantic Shores to provide more information, analyses, data, or documentation that the lessee believes may assist the agency in evaluation by October 30, 2026. *Id.* at 3. After MMA receives Atlantic Shores's submission, if any, it will thoughtfully consider that submission and determine whether more information, analyses, data, or documentation is needed from Atlantic Shores. Any such information submitted by Atlantic Shores, initially or during the course of subsequent exchanges, will be considered by MMA in reaching its decision.

The Court has ordered Federal Defendants to explain "why a 120-day deadline for the conclusion of reconsideration would not be appropriate under the circumstances of the case." Dkt. No. 37 at 12. A fixed deadline is not appropriate, let alone one requiring the remand to be completed within 120 days.

First, neither OCSLA nor Interior's implementing regulations set a deadline for review of COP submittals. *See* 43 U.S.C. § 1337(p); 30 C.F.R. §§ 585.620-585.635. The COP here is voluminous, spanning over a thousand pages. Olsen Decl. ¶ 2. And the statutory factors in 43 U.S.C. § 1337(p)(4) require MMA to consider a wide variety of topics, including the environment, other uses of the area, and national security. Indeed, the agency's initial review of

the Atlantic Shores COP spanned nearly three years. Olsen Decl. ¶ 2. This is not to say MMA anticipates a similar timeline on remand, *see id.*, but shows that reconsideration under § 1337(p)(4) will not necessarily be simple. That would be the case particularly if MMA (or Atlantic Shores) determines that the circumstances require a modification to the current COP. Ex. A at 2.

Second, MMA has demonstrated good-faith efforts to proceed apace. As explained above, MMA has notified Atlantic Shores that the agency is reviewing its prior COP approval and has also outlined its review process on remand. *See* Olsen Decl., Ex. A at 2-3. This includes opportunities for Atlantic Shores to provide information and comment, *id.*, as well as potential interagency and intergovernmental consultation. Olsen Decl. ¶ 3. Thus, to some extent the timeline will be driven by input and responsiveness from entities outside the Department of the Interior. And MMA anticipates efforts to consult with states, local governments and tribes will require significant time. Olsen Decl. ¶ 3. Further, though MMA currently does not anticipate the need for additional review under environmental statutes like the National Environmental Policy Act, Ex. A at 2-3, should the need arise, there may be possible need for further public comment on any revised or supplemented environmental review.

Third, project construction does not appear to be imminent. Practical and legal impediments still exist before Atlantic Shores can begin construction. Olsen Decl. ¶ 5; *see* Giacona Decl. ¶ 19, Dkt. No. 13-1. For instance, the Outer Continental Shelf Clean Air Act permit for the Atlantic Shores Project was remanded to the U.S. Environmental Protection Agency ("EPA") for reevaluation in March 2025, and that reevaluation remains pending. Olsen Decl. ¶ 5; Giacona Decl. ¶ 19. Thus, any "cloud of uncertainty" alleged by Atlantic Shores regarding the timeline or viability of the project exists regardless of MMA's reconsideration of

the COP approval, as Atlantic Shores' Clean Air Act permit, which is necessary for construction of the project, remains subject to reevaluation by EPA.

**PLAINTIFFS' POSITION**

Plaintiffs welcome MMA's September 30, 2026, formal notice of reconsideration and the agency's stated intention to reevaluate the Atlantic Shores COP under 43 U.S.C. § 1337(p)(4), including the analyses underlying the prior COP approval. Plaintiffs concur that the reconsideration should be thorough and permit MMA to obtain additional information and undertake such consultation as is necessary to ensure that any new agency decision is based upon a full understanding of the Project's impacts. Plaintiffs further note that Federal Defendants previously represented that, "With respect to BOEM taking a new agency action, BOEM will also need to consider the sufficiency of its environmental review, including its reviews under NEPA, the National Historic Preservation Act, and ESA." Motion to Remand, ECF No. 13 at 9. Plaintiffs further submit that, consistent with MMA's statement that it may consider "all or part of the analyses that informed the prior COP approval," the reconsideration should take account, where relevant, of analyses and agency determinations developed under other applicable statutes, including the MMPA, CZMA, and Rivers and Harbors Act, insofar as those materials informed or bear upon the COP approval and MMA's evaluation of the § 1337(p)(4) factors.

Plaintiffs intend to cooperate with the remand process and to provide relevant technical information to MMA. Plaintiffs respectfully request that MMA likewise afford Plaintiffs a reasonable opportunity during the reconsideration process to submit relevant information, technical analyses, and other materials bearing on the COP and the § 1337(p)(4) factors.

Regarding the timetable, however, Plaintiffs respectfully submit that the reconsideration should not proceed without a meaningful outer time limit. As the Court previously observed,

significant time has passed since Federal Defendants first advised the Court that reconsideration of the COP was underway, during which the agency may have developed a clearer understanding of the time necessary to complete its review. See ECF No. 37 at 10–11. The approximately three-year period associated with BOEM's original review of the COP is not directly analogous to reconsideration of an existing approval and administrative record. Indeed, Federal Defendants themselves state that MMA does not anticipate a similar timeline on remand. Nor does the fact that construction is not presently imminent eliminate the need for a reasonably prompt agency decision while this litigation remains stayed.

Plaintiffs therefore continue to believe that an outer time limit is appropriate. Courts in this Circuit have exercised their discretion to impose reasonable remand timelines, e.g., Nat'l Ass'n of Regulatory Util. Comm'rs v. United States DOE, 680 F.3d 819 (D.C. Cir. 2012) (Court remanded the matter at issue, requiring the Secretary to make a proper assessment within 6 months). Plaintiffs do not take a position that reconsideration necessarily must be completed within 120 days of the August 10 remand order, but respectfully request that the Court establish a reasonable, date certain deadline for completion of reconsideration, subject to modification upon a particularized showing of good cause.

**ATLANTIC SHORES' POSITION**

For the reasons explained in Atlantic Shores'[2] opposition to the Federal Defendants' remand motion, Dkt. No. 18, the Federal Defendants' remand effort is pretextual, and the status report does nothing to dispel that conclusion. Atlantic Shores agrees with Plaintiffs that the

[2] "Atlantic Shores" refers to Atlantic Shores Offshore Wind, LLC, and the following entities of which it is the sole member and a member manager: (1) Atlantic Shores Offshore Wind Project 1, LLC, which is the developer of Atlantic Shores South Project - Project 1 under Lease OCS-A 0499; and (2) Atlantic Shores Offshore Wind Project 2, LLC, which is the developer of Atlantic Shores South Project - Project 2 under Lease OCS-A 0499, now designated OCS-A 0570.

Court should establish a reasonable date-certain deadline for the Federal Defendants to issue a remand decision. Specifically, the Court should instruct the Federal Defendants to issue a remand decision no later than February 8, 2027, or within 120 days of this status report. *See id.* at 28-31.

As this Court recognized in ordering a remand, "administrative reconsideration" must be "timely," and a 120-day deadline for reconsideration "is not uncommon." Dkt. No. 37 at 10 (quotation marks omitted). The Court also presciently noted that "an open-ended remand without vacatur, can create a new problem: The agency may have little or no incentive to fix the deficient action." *Id.* (quotation marks omitted). The Court accordingly instructed the Federal Defendants to provide an "evidentiary showing" as to why a 120-deadline would "be infeasible." *Id.* at 11.

The Federal Defendants have not done so. They instead ask for the same unlimited, deadline-less remand period this Court already found inappropriate. The Court should once again reject that request. This time, the Court should also set a firm deadline for the remand proceedings.

Interior's apparent desire to reconsider the entire COP and the fact that Interior's regulations do not set a fixed deadline for remand merely underscore—rather than resolve—the risks this Court highlighted in rejecting an open-ended remand period in the first place. That is particularly true given that the Federal Defendants have not, contrary to their representations, "proceed[ed] apace" to date. The Federal Defendants previously told the Court that they did not need a remand to reconsider the COP and represented that they were already engaged in an "ongoing re-evaluation of the COP." Dkt. No. 13 at 7. But despite making that representation

over a year ago in their September 2025 remand motion, the Federal Defendants now suggest that their re-evaluation efforts are just getting underway.

Atlantic Shores submitted its initial COP in March 2021. Dkt. No. 18-1 (Rigal Decl.) ¶ 15. Atlantic Shores consistently responded to the Federal Defendants' requests and addressed all concerns throughout the review process; this process culminated in an approved COP more than three years later in September 2024 with over 80 pages of detailed terms and conditions. *See* Dkt. No. 18 at 8. To date, the Federal Defendants have not identified any specific deficiencies with that process or the approved COP. Indeed, the Federal Defendants have not even identified any specific information that they are looking to collect as part of their information-gathering process nor otherwise defined the scope or substance of those reconsideration proceedings. They instead desire to conduct an open-ended investigation on whatever timetable the Federal Defendants deem convenient. And although Federal Defendants protest that they cannot possibly give a deadline for remand because the time necessary will, in part, depend on how responsive other agencies and commenters are, MMA gave Atlantic Shores a short 30-day deadline to respond to its information request. MMA can do the same for its federal and state colleagues.

Nor have the Federal Defendants shown any particular urgency in the two months since this Court's remand order. The only step they appear to have taken in the last 60 days is to send Atlantic Shores a three-page letter—seven weeks after this Court's August 10, 2026 remand order, *see* Dkt. No. 37—which merely recites the OCSLA Section 1337(p)(4) factors without identifying any particular subject of inquiry and does not even contains an aspirational schedule for the Department's reconsideration efforts, *see* Ex. A at 2 (listing steps in MMA's review process without providing anticipated timelines or deadlines for their completion).

Finally, as Atlantic Shores already explained, Dkt. No. 19 at 23-24, the status of its remanded Clean Air Act permit does not justify allowing the Federal Defendants an indefinite remand period here. Project sponsors must take many significant preparatory steps before construction may begin, including acquiring the necessary materials and contracts, securing financing, and stakeholder and public engagement. *See, e.g.*, Dkt. No. 18-1 (Rigal Decl.) ¶¶ 6, 24, 29. Every day that passes with a cloud of uncertainty lingering over the COP threatens the future viability of the Project and results in financial and operational harm to Atlantic Shores.

********

Consistent with the Court's August 10, 2026 Memorandum Opinion and Order, Dkt. No. 37, the parties will file a joint status report no later than December 8, 2026, and every sixty days thereafter, to update the Court on the status of MMA's remand proceedings, unless the Court sets a firm deadline for MMA to complete its reconsideration.

Dated: October 9, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/Michelle M. Spatz*
AMBER DUTTON-BYNUM
Trial Attorney (D.C. Bar No. 1778319)
Natural Resources Section
(202) 330-2649
amber.dutton-bynum@usdoj.gov
MICHELLE M. SPATZ
Trial Attorney (D.C. Bar No. 1044400)
Wildlife & Marine Resources Section
(202) 598-9741
michelle.spatz@usdoj.gov

*Counsel for Federal Defendants*